# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **1) TMBRS PROPERTY HOLDINGS LLC,** | § | |
| **A Utah Limited Liability Company** | § | |
| **2) ZIBALSTAR, L.C., A Utah Limited** | § | |
| **Liability Company, and** | § | **Case No.: 17-cv-494-JED-FHM** |
| **3: GARY BRINTON, an individual,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| **v.** | § | |
| | § | |
| **1) ROBERT CONTE, an individual,** | § | |
| **2) MARK BEESLEY, an individual,** | § | |
| **3) 2140 S. 109TH EAST OK, LLC, a Texas** | § | |
| **Limited Liability Company,** | § | |
| **4) OXFORDSHIRE HOLDINGS, LLC, a** | § | |
| **Texas Limited Liability Company,** | § | |
| **5) 2507 SOUTH 87th EAST AVE OK, LLC, a** | § | |
| **Texas Limited Liability Company,** | § | |
| **6) 2523 EAST 10TH STREET OK, LLC, a** | § | |
| **Texas Limited Liability Company** | § | |
| **7) HEATHROW HOLDINGS, LLC, a Texas** | § | |
| **Limited Liability Company,** | § | |
| **8) SCOTT PACE, an individual,** | § | |
| **9) NIDIA RUIZ, an individual, and** | § | |
| **10) ERIC MANRIQUEZ, an individual,** | § | |
| | § | |
| **Defendants.** | § | |

## PLAINTIFFS' ORIGINAL COMPLAINT
## AND MOTION FOR PRELIMINARY INJUNCTION

Come now Plaintiffs TMBRS Property Holdings LLC, ZibalStar, L.C., and Gary Brinton (all Plaintiffs collectively, "Plaintiffs"), which allege as follows against Defendants Robert Conte, Nidia Ruiz, Eric Manriquez, Mark Beesley, Scott Pace, 2140 S. 109th East OK, LLC, Oxfordshire Holdings, LLC, 2507 South 87th East Ave OK, LLC, 2523 East 10th Street OK, LLC, and Heathrow Holdings, LLC (all Defendants collectively, "Defendants"), and respectfully would show the Court:

## I. PARTIES

1.      Plaintiff TMBRS Property Holdings LLC ("TMBRS") is a Utah limited liability company with its principal place of business in Utah County, State of Utah. TMBRS' members are: Samuel Fairchild, William Beesley III, Rogan Taylor, and ZibalStar, L.C. Samuel Fairchild is an individual and is a citizen of the State of New Jersey. William Beesley III is an individual and is a citizen of the State of Utah. Rogan Taylor is an individual and is a citizen of the State of Utah.

2.      Plaintiff ZibalStar, L.C. ("ZibalStar"), is a Utah Limited Liability Company, with its principal place of business in Utah County, Utah. Defendant ZibalStar's members are Gary Brinton and Monica Brinton, both of whom are individuals and are citizens of the State of Utah.

3.      Plaintiff Gary Brinton ("Brinton") is an individual and is a citizen of the State of Utah.

4.      Defendant Robert Conte ("Conte") is an individual and is a citizen of the State of Nevada.

5.      Defendant Scott Pace ("Pace") is an individual and is a citizen of the State of Oklahoma.

6.      Defendant Nidia Ruiz ("Ruiz") is an individual and is a citizen of the State of Oklahoma.

7.      Defendant Mark Beesley ("Beesley") is an individual and is a citizen of the State of North Carolina.

8.      Defendant Eric Manriquez ("Manriquez") is an individual and is a citizen of the State of Oklahoma.

9.      Defendant 2140 S. 109th East OK, LLC, ("2140 S.") is a Texas limited liability

**PLAINTIFFS' ORIGINAL COMPLAINT AND MOTION FOR PRELIMINARY INJUNCTION          PAGE 2**

company with its principal place of business in Texas. On information and belief, Defendant Conte is the sole member of 2140 S. 109th East OK, LLC. Defendant Conte is a citizen of the State of Nevada.

10.     Defendant Oxfordshire Holdings, LLC, ("Oxfordshire") is a Texas limited liability company with its principal place of business in Texas. On information and belief, Defendant Conte is the sole member of Oxfordshire Holdings LLC. Defendant Conte is a citizen of the State of Nevada.

11.     Defendant 2507 South 87th East Ave OK LLC ("2507 South") is a Texas limited liability company with its principal place of business in Texas. On information and belief, Defendant Conte is the sole member of 2507 South 87th East Ave OK LLC. Defendant Conte is a citizen of the State of Nevada.

12.     Defendant 2523 East 10th Street OK LLC ("2523 East") is a Texas limited liability company with its principal place of business in Texas. On information and belief, Defendant Conte is the sole member of 2523 East 10th Street OK LLC. Defendant Conte is a citizen of the State of Nevada.

13.     Defendant Heathrow Holdings, LLC ("Heathrow") is a Texas limited liability company with its principal place of business in Texas. On information and belief, Defendant Conte is the sole member of Heathrow Holdings, LLC. Defendant Conte is a citizen of the State of Nevada.

14.     The Defendants referenced in *supra* paragraphs 9 through 13 are hereinafter referred to collectively as the "Entity Defendants."

## II. <u>JURISDICTION AND VENUE</u>

15.     Diversity jurisdiction exists in this civil action under 28 U.S.C. § 1332(a) because

the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is a controversy between citizens of different states. Venue is proper in this district under 28 U.S.C. §1391(a) because it is a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

### III. <u>CONDITIONS PRECEDENT</u>

16.     All conditions precedent have been performed or have occurred.

### IV. <u>FACTS</u>

**A.     Factual and Procedural Background**

17.     On June 12, 2017, Plaintiffs and other associated entities and persons filed a Racketeer Influenced and Corrupt Organizations Act suit now pending before the United States District Court, District of Utah, styled *ZibalStar, L.C., et al., v. Robert Conte, et al.*, Civil Action No.: 2:17-CV-00563-JNP ("RICO Action"), which addresses a series of real property transactions, including leases with option to purchase, involving tens of millions of dollars and real properties located in at least four different states, including the following apartments located in Oklahoma:

- Cove Apartments at 1246 South Memorial Drive, Tulsa, Oklahoma 74112, leased by Plaintiff TMBRS from Defendants Conte and 2140 S. (see "Declaration of Gary Brinton," attached hereto as Exhibit 1; "Cove and Bradford Master Lease," attached hereto as Exhibit 1-A);

- Bradford Townhomes at 2140 S. 109th East, Tulsa, Oklahoma 74129 leased by TMBRS from Defendants Conte and 2140 S. (see Exhibit 1-A);

- Four Oaks at 2523 East 10th Street, Tulsa, Oklahoma 74104, leased by TMBRS from Defendants Oxfordshire, 2507 South, and 2523 East (see "Declaration of Gary Brinton," attached hereto as Exhibit 1; "Four Oaks and Silverwood Master Lease," attached hereto as Exhibit 1-B);

- Silverwood Apartments at 2507 South 87th East Ave., Tulsa, Oklahoma 74129, leased by TMBRS from Defendants Oxfordshire, 2507 South, and 2523 East (see Exhibit 1-B);

- Whispering Oaks at 1140 South 101st East Ave., Tulsa, Oklahoma 74128, leased by TMBRS from Defendants 2507 South and Heathrow. See Exhibit 1-C.

These properties are hereinafter referred to as the "Oklahoma Properties".

18.     Subject to the RICO Action are claims that will show that Defendant Conte and his co-conspirators persuaded Plaintiff Brinton—who ultimately controls and manages Plaintiffs TMBRS and ZibalStar—into putting certain personnel in management roles over the Oklahoma Properties, including Defendant Manriquez, so that these personnel would mismanage the properties and divert funds to force Plaintiff TMBRS and other Brinton-controlled tenants into default and foreclosure.

**B.      Defendant Conte's Trespass and Conversion of Rents at the Cove Apartments and the Bradford Townhomes.**

19.     On July 20, 2017, after the RICO Action was filed, Defendant Conte filed an Original Petition in the matter styled *Robert Conte v. TMBRS Property Holdings LLC*, Cause No. SC-2017-11426, in the District Court in and for Tulsa County, Oklahoma, to evict TMBRS as lessee of the Cove Apartments before final disposition of the RICO Action.

20.     At or about the same time, Defendant 2140 S., controlled by Conte, also filed an eviction action in the matter styled *2140 S. 109th East OK, LLC, v. TMBRS Property Holdings, LLC*, Cause No. SC-2017-11424, in the District Court in and for Tulsa County, Oklahoma, to evict TMBRS as lessee of the Bradford Townhomes before final disposition of the RICO Action.

21.     These two cases are hereinafter referred to collectively as the "Eviction Actions."

22.     Unless and until Plaintiff TMBRS is duly evicted, it holds lawful possession of the Cove Apartments, the Bradford Townhomes, and the other Oklahoma Properties. See Declaration 1; Exhibit 1-A.

23.     Despite the fact that self-help eviction is illegal in Oklahoma and that neither the Eviction Actions nor the RICO Action have been resolved, and despite the fact that Plaintiff TMBRS has replaced Conte's cronies with new management at the Oklahoma Properties, Conte has engaged in ongoing attempts to continue to divert monies due to Plaintiff TMBRS from the Cove Apartments and from the Bradford Townhomes.

24.     Within the last month, Defendant Ruiz, acting for and on behalf of Defendant Conte, has been making phone calls to tenants at the Cove Apartments and the Bradford Townhomes instructing tenants to discontinue making rent payments to TMBRS and to begin making rent payments to Conte. See Declarations of Lonnie B. Chandler, Jr., Ceira Murphy, and Billie Bell, attached hereto as Exhibits 2, 3, and 4. In fact, one tenant double-paid rent for the month of August, tendering payment to both Plaintiff TMBRS and Defendant Conte. Declaration 3.

25.     Conte has engaged in other similar actions as to properties at issue in related suits and that are leased by entities controlled by Plaintiff Brinton. On or around July 29, Conte, with the help of a man named Orren Tidwell, broke into one of the units at the Manzana Apartments located at 5925 Callaston Lane in Fort Worth, Texas, and took up residence there with his fiancé Ashley Fulton and another woman by the name of Rita Ireland. See Declaration of Felina Sifuentes, attached hereto as Exhibit 5.

26.     The Manzana Apartments are also subject to the RICO Action. Like the Cove Apartments and the Bradford Townhomes, the Manzana Apartments are leased by an entity that is controlled by Plaintiff Brinton. See Exhibit 1; Exhibit 1-D.

27.     Soon after illegally taking up residence in the Manzana Apartments, Defendant Conte, Ashley Fulton, Orren Tidwell, and Rita Ireland (collectively, "Conte Trespassers") began

distributing a flier with a message similar to the phone calls being made to the Cove Apartments and the Bradford Townhomes, claiming that Conte was the landlord of the property and that all rents should be paid to Conte and that no further rents should be paid to current management. Declaration 5; "Urgent Notification to All Residents," attached hereto as Exhibit 5-A. Although the flier is dated July 14, 2017, it was distributed on Saturday, July 29, and mailed so as to arrive on the same date. Exhibit 5.

28.     On Sunday, July 30, 2017, security employed by the Manzana Apartments detained Conte and Orren Tidwell. Declaration 5; photograph of Conte and Tidwell, attached hereto as Exhibit 5-B.

29.     The police were notified of the Conte Trespassers' continuous trespasses at the Manzana Apartments and attempts to divert Manzana Apartments rent monies, however, the police informed the Manzana Apartments staff that this was a mere "civil matter" and that they would not interfere. Exhibit 5.

30.     With the police unwilling to remove him, Conte continued his trespass and caused a sufficient disturbance that one resident of the Manzana Apartments, living near the unit where the Conte Trespassers had taken up residence, suffered a fatal heart attack. Exhibit 5.

31.     Conte has engaged in the same type of activity at the Tres Palms Apartments, another apartment located at 5400 Boca Raton Boulevard in Fort Worth that is also leased by an entity controlled by Brinton. Within the last week, Conte has been sending out a self-help eviction flier instructing tenants at the Tres Palms Apartments to discontinue making rent payments to TMBRS and to begin making rent payments to himself. Exhibit 5; "Urgent Notification to All Residents," attached hereto as Exhibit 5-C.

32.     Two federal courts in the Northern District of Texas have already enjoined Conte and his agents from any further trespass and attempts to divert rent monies as to the Manzana Apartments and the Tres Palms Apartments. *See* Declaration of John Mertens, attached hereto as Exhibit 6; "Preliminary Injunction[s]," attached hereto as Exhibits 6-A and 6-B.

33.     Defendant Manriquez, one of the persons who mismanaged the Oklahoma Properties for Defendant Conte's benefit, has also been witnessed on the property at the Cove Apartments, although he has no employment there and is not a resident. *See* Declaration of Christina Keppley, attached hereto as Exhibit 7; photograph of Manriquez vehicle, attached hereto as Exhibit 7-A.

34.     As further discussed and moved for below, in addition to seeking recovery of all funds converted that were due to TMBRS from the Cove Apartments and the Bradford Townhomes, Plaintiffs herein seek a preliminary injunction against all Defendants as to all the Oklahoma Properties.

**C.      The Silverwood Transaction**

35.     In 2015, Plaintiff TMBRS, as tenant, entered into a Master Lease with Option to Purchase three apartment complexes located in Oklahoma and Texas (*see* Exhibit 1-B, hereinafter referred to as the "Silverwood Master Lease"), including an apartment complex located at 2507 South 87th East Ave., Tulsa, Oklahoma 74129, known as the Silverwood Apartments ("Silverwood Apartments"). Plaintiff TMBRS entered into the Silverwood Master Lease with Defendants Oxfordshire, 2507 South, and 2523 East as "Landlords."

36.     Plaintiff TMBRS paid $1,200,000.00 for the option to purchase the three apartments complexes subject to the Silverwood Master Lease, including the Silverwood Apartments. *See* Exhibit 1-B at 1.

37.     In the fall of 2016, Plaintiff ZibalStar purchased a controlling voting interest and an ownership interest in Plaintiff TMBRS from Defendant Beesley. Plaintiff ZibalStar agreed to pay to Beesley a total of $612,000.00 in five installments over a period of ninety days. Plaintiff Brinton, the controlling member of Plaintiff ZibalStar, personally guaranteed this amount.

38.     On or before August 10, 2016, Defendants Conte and Beesley each told Plaintiff Brinton in telephone conversations that the Silverwood Apartments were unencumbered. This is important because Plaintiff TMBRS held a lease with option to purchase the Silverwood Apartments as one of its valuable assets. Defendant Scott Pace in fact held a lien on the Silverwood Apartments. On or around July 27, 2017, over the telephone, Theodore L. Hansen, who works for Defendant Conte, informed Plaintiff Brinton that it was his understanding, based on his conversations with Defendant Conte and Pace, that Defendants Conte and Pace agreed together that Defendant Pace would foreclose on the Silverwood Apartments so that Defendant Conte could subsequently buy it back from him.

## V. CAUSES OF ACTION

### A.    COUNT 1—FRAUD

39.     Pursuant to Federal Rule of Civil Procedure 10(c), Plaintiffs re-allege and incorporate by reference each of the allegations made in the preceding paragraphs.

40.     Defendant Conte told Plaintiff Brinton that there were no liens on the Silverwood Apartments. Defendant Conte made this statement on or before August 10, 2016, over the phone to Brinton. Defendant Beesley also told Plaintiff Brinton that there were no liens on the Silverwood Apartments. He made this representation on or before August 10, 2016 over the phone to Brinton. These statements were false, as Defendant Scott Pace held a lien on the property, filed a foreclosure on it, and purchased it at auction.

41.      Both Defendants Conte and Beesley knew their assertions to be false or made them recklessly without knowledge of the truth with the intent that Plaintiff Brinton and Plaintiff ZibalStar purchase Defendant Beesley's interest in TMBRS for $612,000.00. Plaintiffs Brinton and ZibalStar obligated themselves to pay this amount to Defendant Beesley, which they would not have done had they known that the Silverwood Apartments was encumbered. Defendants actions have caused Plaintiff TMBRS actual damages to be proved at trial in an amount not less than $75,001.

**B.**      **COUNT 2—BREACH OF CONTRACT; IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

42.      Pursuant to Federal Rule of Civil Procedure 10(c), Plaintiffs re-allege and incorporate by reference each of the allegations made in the preceding paragraphs.

43.      Plaintiff TMBRS entered into a contract with Defendants Conte and 2140 S. for the lease with option to purchase of the Silverwood Apartments. Exhibit 1-B. Like every contract in Oklahoma, this contract contained an implied duty of good faith and fair dealing. Defendants Conte, Pace, and 2140 S. breached this duty by conspiring to: (1) conceal the lien on the property held by Defendant Pace; (2) have Defendant Pace foreclose on the property; (3) with the understanding that Defendant Conte would thereafter buy back the property from Defendant Pace. This breach has caused Plaintiff TMBRS actual damages to be proved at trial in an amount not less than $75,001.

**C.**      **COUNT 3—CONVERSION**

44.      Pursuant to Federal Rule of Civil Procedure 10(c), Plaintiffs re-allege and incorporate by reference each of the allegations made in the preceding paragraphs.

45.      Defendants Conte and Ruiz wrongfully exercised dominion over rent monies that were due to Plaintiff TMBRS by misrepresenting to tenants that they must pay any rent to

Defendant Conte. TMBRS has a right to all rent monies due from tenants at the Bradford Townhomes and the Cove Apartments. *See* Exhibit 1-A. Defendants Conte and Ruiz's diversion of these rent monies was a wrongful interference with TMBRS's property right and has caused TMBRS damages in the amount of the rents diverted.

**D.    COUNT 4—CONSPIRACY**

46.    Pursuant to Federal Rule of Civil Procedure 10(c), Plaintiffs re-allege and incorporate by reference each of the allegations made in the preceding paragraphs.

47.    As set forth above, Defendants Conte, Pace, Oxfordshire, 2507 South, and 2523 East conspired to achieve the fraudulent purposes set forth in Counts 1 through 2 of the Complaint.

48.    On or around July 27, 2017, over the telephone, Theodore L. Hansen informed Plaintiff Brinton that Defendants Conte and Pace agreed together that Defendant Pace would foreclose on the Silverwood Apartments so that Defendant Conte could subsequently buy it back from him. Thus, these defendants conspired to: (1) conceal the lien on the property held by Defendant Pace; (2) have Defendant Pace foreclose on the property; (3) with the understanding that Defendant Conte would thereafter buy back the property

49.    Plaintiffs have been damaged by this conspiracy in that they have overpaid for real estate or for an interest in a company that owns real estate, and ultimately may lose properties through the actions of these defendants. Damages will be proved at trial in an amount not less than $75,001.

**E.    COUNT 5—CONSPIRACY**

50.    Pursuant to Federal Rule of Civil Procedure 10(c), Plaintiffs re-allege and incorporate by reference each of the allegations made in the preceding paragraphs.

51.     As set forth above, Defendants Conte, 2140 S., and Ruiz conspired to achieve the fraudulent purposes set forth in Count 3 of the Complaint. Defendant Ruiz called tenants directing them to pay monthly rent to Defendant Conte instead of the lawful possessor of the Cove Apartments and the Bradford Townhomes. Plaintiff TMBRS has been damaged in the amount of the rents diverted.

## VI. <u>MOTION FOR PRELIMINARY INJUNCTION</u>

52.     Pursuant to Federal Rule of Civil Procedure 10(c), Plaintiffs re-allege and incorporate by reference each of the allegations made in the preceding paragraphs.

### A. <u>Statement of Precise Relief Sought</u>

53.     Plaintiffs seek a preliminary injunction to preserve the status quo until the Eviction Actions and RICO Action are resolved. Specifically, Plaintiffs seek a preliminary injunction:

   a.   Prohibiting Defendants Conte, Ruiz, Manriquez, the Entity Defendants, the Conte Trespassers, and their agents, from coming onto or entering any of the Oklahoma Properties.

   b.   Ordering Defendants Conte, Ruiz, Manriquez, the Entity Defendants, the Conte Trespassers, and their agents to return any rents they have received that are derived from the Oklahoma Properties, including the Cove Apartments the Bradford Townhomes, and that are thus due to TMBRS, and also prohibiting them from any further attempts at collecting rents due from the Oklahoma Properties pending resolution of any eviction actions related thereto; and

   c.   Declaring that as among Defendants and TMBRS, the appropriate party to receive rents from any tenants of the Oklahoma Properties is TMBRS.

### B. <u>Argument and Authorities</u>

### 1. Plaintiffs satisfy all the criteria for a preliminary injunction.

54. A party moving for a preliminary injunction to preserve the status quo pending the outcome of the case must show the following:

(1) the moving party will suffer irreparable injury unless the injunction issues;
(2) the threatened injury to the moving party outweighs whatever damage the proposed injunction may cause the opposing party;
(3) the injunction, if issued, would not be adverse to the public interest; and
(4) there is a substantial likelihood that the moving party will eventually prevail on the merits.

*Tri-State Generation & Transmission Ass'n, Inc. v. Shoshone River Power, Inc.*, 805 F.2d 351, 355 (10th Cir. 1986).

55. Although "[i]t is the movant's burden to establish that each of these factors tips in his or her favor," as long as "the moving party has established that the three 'harm' factors [(1), (2), and (3)] tip decidedly in its favor, the [fourth] 'probability of success requirement' [(4)] is somewhat relaxed." *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1188-89 (*quoting Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1246 (10th Cir. 2001)). In such cases, "the movant need only show 'questions going to the merits so serious, substantial, difficult, and doubtful to make them fair ground for litigation." *Heideman*, 348 F.3d at 1189.

### a. Without injunctive relief, Plaintiffs will be irreparably harmed.

56. Unless Defendants Conte, Ruiz, Manriquez, 2140 S., the Conte Trespassers and their agents, are ordered not to trespass on the Oklahoma Properties, Plaintiffs will be irreparably harmed because Defendants Conte, Ruiz, Manriquez, the Entity Defendants, the Conte Trespassers and their agents are almost certain to trespass there in the same manner as they have at the Manzana Apartments. A multiplicity of suits would therefore be necessary to seek legal redress for the repeated and continuous trespass. In addition, these defendants' actions are a threat to the Plaintiffs' trade and jeopardize their viability. The Plaintiffs satisfy the irreparable harm standard

for a preliminary injunction.

### i. The threatened trespasses at issue constitute irreparable harm because a multiplicity of suits would be necessary to secure a legal remedy.

57.     "The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506–07, 79 S. Ct. 948, 954, 3 L. Ed. 2d 988 (1959). This requirement is met when a multiplicity of suits would be required to obtain a full legal remedy. *See, e.g.*, *Lee v. Bickell*, 292 U.S. 415, 421, 54 S. Ct. 727, 730, 78 L. Ed. 1337 (1934) ("the multiplicity of actions necessary for redress at law being sufficient, without reference to other considerations, to uphold the remedy by injunction."). Although the Plaintiffs have a legal cause of action for any future trespasses committed by Defendants Conte, Ruiz, Manriquez, the Entity Defendants, the Conte Trespassers, and their agents, repeated suits would be necessary for a full legal remedy, so that option is impracticable and inefficient. *See* 42 Am. Jur. 2d Injunctions § 39 ("It is not meant . . . that the mere existence of an available legal remedy will defeat the right to injunction, for to have that effect the legal remedy must be as practicable and efficient toward the ends of justice as an injunction."). As a result, injunctive relief is appropriate to stop repeated or continuous trespass. *See generally* 1 Dan B. Dobbs, et al., *The Law of Torts* § 56 (2d ed. 2011) ("Courts will issue injunctions to prevent trespasses that threaten to continue or to be repeated."); 8 Richard R. Powell, Powell on Real Property § P6.07[5][b] (2015) ("The nature of the tort of trespass indicates that it may be continuous or repeated or threatened to be repeated. Injunctive relief is appropriate in any of these cases.").

58.     Binding authority in this circuit specifically recognizes the principle that continued

or repeated trespass creates irreparable harm "because a multiplicity of suits for damages is never an adequate remedy for the loss which constantly repeated trespasses entail." *Stearns-Roger Mfg. Co. v. Brown*, 114 F. 939, 945 (8th Cir.[1] 1902); *see also Dimick v. Shaw*, 94 F. 266, 268 (8th Cir. 1899) ("A continuing trespass upon real estate, or upon an interest therein, to the serious damage of the complainant, warrants an injunction to restrain it. A suit in equity is generally the only adequate remedy for trespasses continually repeated, because constantly recurring actions for damages would be more vexatious and expensive than effective."). Other courts that have considered continued or repeated trespass have likewise concluded that the irreparable harm standard is met and an injunction is justified in such cases. *See United States v. Zenon*, 711 F.2d 476, 478 (1st Cir. 1983) ("A court has power to enjoin a trespass if it would cause irreparable injury, or if there are repeated instances of trespassing, and a single injunction might forestall a 'multiplicity' of legal actions."); *United States v. Colvard*, 89 F.2d 312, 314 (4th Cir. 1937) ("it is, of course, well settled that injunctive relief is proper against continuing trespass or against repeated trespasses where there is threat of continuance and the remedy at law is inadequate or multiplicity of suits would be avoided by the equitable remedy."); *Swan Island Club v. Ansell*, 51 F.2d 337, 339 (4th Cir. 1931) ("it is thoroughly well established that equity does have jurisdiction to restrain repeated and continuing trespasses"); *The Salton Sea Cases*, 172 F. 792, 800 (9th Cir. 1909) ("A continuing trespass upon real estate or upon an interest therein, to the serious damage of the complainant, warrants an injunction to restrain it. A suit in equity is generally the only adequate remedy for trespasses continually repeated, because constantly reoccurring actions for damages

---

[1] The Tenth Circuit has recognized the binding effect of the decisions of the Eighth Circuit prior to the 1929 Act that created the Tenth Circuit out of the Eighth Circuit. *See Boynton v. Moffat Tunnel Improvement Dist.*, 57 F.2d 772, 781 (10th Cir. 1932) (Tenth Circuit stated that "decisions . . . from the Eighth Circuit Court of Appeals . . . are binding upon us.")

would be more vexatious and expensive than effective.").[2]

59.     In this case, where the threatened trespass is not only repeated and continuous but also accompanied by an attempt to convert and divert rent monies, plaintiffs clearly suffered irreparable harm.

60.     Thus, since Plaintiffs can only obtain a legal remedy for the threatened trespasses and associated damages by Defendants Conte, Ruiz, the Entity Defendants, the Conte Trespassers, and their agents, via a series of suits for trespass, the irreparable harm standard is met here and injunctive relief is appropriate.

> ### ii. The enjoined parties' actions constitute irreparable harm because they threaten Plaintiffs' trade and jeopardize their viability.

61.     The *Tri-State* court held that a plaintiff would suffer irreparable harm if the defendant were not enjoined from actions that would "jeopardize" the plaintiff's "viability." 805 F.2d at 356 ("As a result of this 'domino effect,' Tri-State would be unable to repay its debts . . . ,

---

[2] *See also Gaulter v. Capdeboscq*, 404 F. Supp. 900, 904 (E.D. La. 1975) (enjoining "the defendants . . . and all persons acting in concert with them or under their instructions, from trespassing on or destroying plaintiff's property" until a final adjudication including of the ownership of the property); *Potomac Elec. Power Co. v. Washington Chapter of Cong. of Racial Equal.*, 210 F. Supp. 418, 420 (D.D.C 1962) ("If the trespass is continuous in its nature, if repeated acts of wrong are done or threatened, although each of these acts, taken by itself, may not be destructive, and the legal remedy may therefore be adequate for each single act if it stood alone, then also the entire wrong will be prevented or stopped by injunction, on the ground of avoiding a repetition of similar actions" (citations, quotation marks omitted); *Miracle v. Jacoby*, 192 F. Supp. 907, 911 (W.D. Ark. 1961) ("The general rule permits injunctive relief for repeated or continuing trespasses, even in cases where the damage is nominal and no single trespass causes irreparable injury." (citations, quotation marks omitted)); *accord, e.g., Aberdeen Apartments v. Cary Campbell Realty All., Inc.*, 820 N.E.2d 158, 168 (Ind. Ct. App. 2005) ("Campbell Realty's delivery teams enter the Apartments' properties on a weekly basis. This constitutes a continuing trespass. A trial court may issue an injunction in order to prevent a continued trespass." (internal quotation marks omitted)); *Reprod. Health Servs. v. Lee*, 712 S.W.2d 718, 720 (Mo. Ct. App. 1986) ("It has been held that where a trespass is recurring and would involve a multiplicity of suits an injunction will lie to restrain it. In such a case there is no adequate remedy at law, and plaintiff need not show irreparable harm. Furthermore, the threat of future trespasses may be inferred from the frequency and pattern of defendant's entry upon plaintiffs' property." (internal citations, quotation marks omitted)).

would be forced into bankruptcy, and would likely collapse."). A threat to trade or business viability may constitute irreparable harm. *See, e.g.*, *John B. Hull, Inc. v. Waterbury Petroleum Products, Inc.*, 588 F.2d 24, 28–29 (2d Cir.1978) (possibility of going out of business is irreparable harm); *Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197, 1205 (2d Cir.1970) (loss of right to continue business may support claim of irreparable injury). The threat of a plaintiff's demise while pursuing a non-collectable judgment is therefore sufficient to show irreparable injury:

> If the preliminary injunction does not issue, Tri-State has no protection against the loss of its business while the litigation progresses. Rather, it would perhaps be left after a trial on the merits with an empty victory. Shoshone may be found to have breached its contract with Tri-State, but in the meantime Tri-State would have ceased to exist. Tri-State has adequately shown that without the preliminary injunction, it will suffer irreparable harm.

*Tri-State*, 805 F.2d at 356; *see also Potomac Elec. Power Co. v. Washington Chapter of Cong. of Racial Equal.*, 210 F. Supp. 418, 419 (D.D.C 1962) ("It is well established that equity may enjoin continuing trespasses, repeated or irreparable injuries to property, or a course of illegitimate interference with business activities, if a remedy by an action for damages is not adequate.")

62.     Because of the conduct of Defendants Conte, Ruiz, the Entity Defendants, the Conte Trespassers, and their agents, Plaintiffs could lose their trade and viability as to the Oklahoma Properties. Rent monies are used not only to make the lease payments due to Defendants Conte and the Entity Defendants, but also to pay operating expenses and make payroll for Oklahoma Properties' staff. Injunctive relief is necessary to prevent the perpetration of these numerous wrongs or to compel the cessation of their continuing misconduct.

63.     Thus, Plaintiffs amply meet the irreparable harm requirement.

**b.     The threatened injury to Plaintiffs outweighs whatever damage injunctions may cause the enjoined parties.**

64.     Plaintiffs seek an order enjoining Defendants Conte, Ruiz, Manriquez, the Entity

Defendants, the Conte Trespassers, and their agents from violating the law by wrongfully taking possession of real property and by wrongfully diverting rent monies due to the lessee. These persons cannot be heard to complain of harm because they have no right to continue breaking the law. Thus, the injunctive relief sought is merely a preservation of the status quo.

65.     For example, in *Autoskill Inc. v. Nat'l Educ. Support Sys., Inc.*, 994 F.2d 1476, 1498 (10th Cir. 1993) *overruled on other grounds by TW Telecom Holdings Inc. v. Carolina Internet Ltd.*, 661 F.3d 495 (10th Cir. 2011), the district judge rejected an intellectual property infringer's claim that the injunction would "devastate" its business, holding that, even assuming devastation, a wrongdoer cannot be permitted to construct its business around its wrongdoing. The Tenth Circuit affirmed, holding that the harm from being forced to stop unlawful conduct "merits little equitable consideration and is insufficient to outweigh the continued [wrongdoing]," because "placing too much weight on this factor would reward" wrongdoers. *Id.* (internal citations, quotation marks omitted). [3] As a result, Plaintiffs have shown that the balance of harms weighs in their favor.

**c.     Injunctive Relief Would Support the Public Interest.**

66.     To the extent that the public interest factor applies to this Motion, it weighs in favor of injunctive relief. Allowing a party to continue violating the law (such as by self-help eviction) is never in the public interest, whereas the enforcement of an owner or leaseholder's property rights

---

[3] This case is also similar to *Novell Inc. v. Timpanogos Research Grp. Inc.*, Case No. 970400339, 1998 WL 177721, at *25 (Utah Dist. Ct. Jan. 30, 1998), in which the court held that "where defendants have no legal claim to Novell's technologies and proprietary information, they are hard pressed to claim that they should be permitted to use that which they unlawfully took from Novell. Because they do not have a legal basis to use Novell's confidential information, the threat to Novell if defendants use this information and technology clearly outweighs any risk to defendants." *Id.* at *25. As in *Novell*, the parties sought to be enjoined would be "hard pressed" to claim they should be able to continue to pillage Plaintiffs' property. *Id.*

is in the public interest. *See, e.g., Manheim Remarketing, Inc. v. J & B Auto Sales & Brokerage, LLC*, Case No. 12-60609-CIV, 2012 WL 12873223, at *4 (S.D. Fla. Apr. 13, 2012) ("the potential hardship that a temporary restraining will impose on the Defendants in light of the indication in the record that the Defendants have no rights of possession"; in contrast, "the defense and preservation of [Plaintiff's] property rights and security interest is in the public interest, as it supports the enforcement of valid contracts and property rights"); *Gustafson v. Poitra*, Case No. 4:12-CV-129, 2012 WL 4755410, at *3 (D.N.D. Oct. 5, 2012) (Plaintiffs had shown "needless interference with property rights and interference with an ongoing business," and "[t]he public interest weighs in favor of protecting against such activity."). Thus, TMBRS satisfies the public interest requirement for injunctive relief.

> **d.      There is a substantial likelihood that Plaintiffs will prevail on the merits of the underlying claim, or the case presents serious issues on the merits which should be the subject of further litigation.**

67.      Finally, there is more than a substantial likelihood that Plaintiffs will prevail on the merits of the underlying trespass claim. At the outset, it is worth noting that the Tenth Circuit has adopted the Second Circuit's liberal definition of the "probability of success" requirement. When the other three requirements for a preliminary injunction are satisfied, "it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation." *Otero Sav. & Loan Ass'n v. Fed. Reserve Bank of Kansas City, Mo.*, 665 F.2d 275, 278 (10th Cir. 1981). 25.

68.      Furthermore, Plaintiff TMBRS is clearly entitled to possession of the Oklahoma Properties at least until any eviction actions are heard and ruled on. Plaintiff TMBRS leases the Oklahoma Properties from Defendant Conte and the Entity Defendants. *See* Exhibits 1-A through

1-C. Plaintiff TMBRS intends to show at trial of any eviction actions that these lease agreements are bound up in a scheme to defraud that spans over a dozen properties located in at least four states and that Plaintiff TMBRS is entitled to continued possessory interest under the lease. Regardless of the outcome of any eviction actions, however, there can be no question that Plaintiff TMBRS will prevail on the merits as to its *current* entitlement to possession of the Oklahoma Properties.

69.     Thus, Plaintiffs satisfy the fourth preliminary injunction prerequisite by showing there is a substantial likelihood that they will prevail on the merits of the underlying claim; at a minimum, the case presents serious issues on the merits that should be the subject of further litigation.

### 2.     No bond is necessary because the enjoined parties have no ongoing protectable property or other interest.

70.     Plaintiffs need not post a bond, because, as discussed above, Defendants Conte, Ruiz, Manriquez, the Entity Defendants, the Conte Trespassers and their agents have no legal right to possession of the Cove Apartments. In the absence of any harm to them, no bond is required under Rule 65. For example, in *Continental Oil Co. v. Frontier Refining Co.*, 338 F.2d 780, 782 (10th Cir. 1964), the Tenth Circuit upheld a district court's grant of injunctive relief without a bond, noting that "[t]he trial judge has wide discretion in the matter of requiring security and if there is an absence of proof showing a likelihood of harm, certainly no bond is necessary." The court went on to hold that no bond is necessary where the movant "is a corporation with considerable assets and [the movant] is able to respond in damages if [the nonmovant] does suffer damages by reason of the injunction." *Id.* Since lawbreakers are not harmed by being enjoined from breaking the law, and Plaintiffs can respond to damages if needed anyway, Plaintiffs should not be required to post bond.

## VII. <u>CONCLUSION AND PRAYER</u>

71.     Plaintiffs therefore respectfully request that this Court enter a preliminary injunction enjoining Defendants Conte, Ruiz, Manriquez, the Entity Defendants, the Conte Trespassers and their agents from trespassing on the Oklahoma Properties and converting and diverting any rent monies due from the Oklahoma Properties and ordering them to return rents already converted, and that the Court set a hearing and grant a preliminary injunction as soon as reasonably possible.

72.     Plaintiffs further request that its Complaint be set for trial and that the Court grant Plaintiffs the following relief against Defendants, jointly and severally, as follows:

1.      Compensatory damages to be proven at trial;

2.      Exemplary damages to be proven at trial;

3.      Attorneys' fees and costs of suit;

4.      Pre-judgment interest at the maximum rate allowed by law; and

5.      Such other and further relief as the Court deems just and proper.


Respectfully submitted,


By:  __/s/P. Scott Hathaway_____
P. Scott Hathaway, OBA No. 13695
Chris M. Warzecha, OBA No. 30764
CONNER & WINTERS, LLP
4000 One Williams Center
Tulsa, OK 74172-0148
(918) 586-8510
(918) 586-8610 (Fax)
shathaway@cwlaw.com
cwarzecha@cwlaw.com

ATTORNEYS FOR PLAINTIFFS