## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

TMBERS Property Holdings, LLC, *et al*.,

        *Plaintiffs,*

vs.

ROBERT CONTE, *et al*.,

        *Defendants.*

Case No. 17-cv-494-EFM-SH

## MEMORANDUM AND ORDER

Plaintiffs Gary Brinton, TMBRS Property Holdings, LLC, and ZibalStar, L.C., brought this action in August 2017 alleging fraud and conspiracy relating to five apartment properties which they managed in Tulsa, Oklahoma. These properties are the Cove Apartments, Bradford Townhomes, Four Oaks Apartments, Whispering Oaks Apartments, and Silverwood Apartments. The Complaint names as Defendants Robert Conte, Mark Beesley, Scott Pace, Nidia Ruiz, and Eric Manriquez, as well as five business entities associated with Conte.

The matter is before the Court on the Motions to Dismiss filed by Plaintiffs and the Conte Defendants as to the cross and counterclaims filed by Defendant Pace and by Intervenor Tulsa Silverwood Apartments for, among other things, a lack of subject matter jurisdiction. (Docs. 249, 250, 251, 252). Each of these parties have also moved to join in the arguments advanced by the other. (Docs. 253, 255, 257). Pace and Tulsa Silverwood have not separately opposed the Motions for Joinder, but do argue their claims are not subject to dismissal. These parties seek to preserve

the court's jurisdiction by separate motions to realign the parties (Doc. 262) and to dismiss Defendants Manriquez and Ruiz.  (Doc. 263).  For the reasons provided here, the Court grants the Motions to Dismiss.

## I.      Factual and Procedural Background

### A.      The Original Complaint

According to the Original Complaint, Brinton manages and controls the other Plaintiffs, TMBRS and ZibalStar.  By virtue of various leases, Plaintiffs allege they were the rightful managing tenants of the apartment complexes at the time of the Complaint.  All three Plaintiffs are residents of Utah.

Plaintiffs' original Complaint alleged that Defendant Robert Conte, a resident of Nevada, was the sole member in five Texas limited liability companies: 2140 S. 109th East OK, LLC; Oxfordshire Holdings LLC; 2507 South 875h East Ave OK LLC; 2523 East 10th Street OK LLC; and Heathrow Holdings, LLC.  As discussed below, however, neither the Plaintiffs, nor Conte for that matter, then understood the true nature of the entity known as 2507 South LLC.

The Complaint alleged that Conte conspired with other Defendants to persuade Brinton to allow him to install his agents into management roles at the Cove Apartments and the Bradford Townhomes.  Conte and his agents (including Defendants Manriquez and Ruiz) then worked to wrongfully divert to Conte rents properly belonging to Brinton.

The Complaint further alleged that in 2015 TMBRS had entered into a Master Lease for the management of the Silverwood Apartments, and had also paid $1.2 million for an option to buy the apartments.  The following year, ZibalStar paid Defendant Beesly $612,000 to buy his interest in TMBRS, based on the false representations of Beesley and Conte that the Silverwood Apartments were unencumbered, when in fact they were subject to a lien by Defendant Pace.

According to the Complaint, Conte and Pace entered into a conspiracy in which Pace would foreclose on the apartments and then sell them to Conte. Plaintiffs brought claims for trespass and conversion of rents at the Cove Apartments and Bradford Townhomes, fraud regarding title to Silverwood Apartments, and sought both damages and injunctive relief.

Defendants filed Answers disputing these claims, and Defendant Pace filed counterclaims and crossclaims, in which he asserted that he had a superior right and interest in the Whispering Oaks, Four Oaks, and Silverwood Apartments. In his October 10, 2017 counterclaim, Pace asked for equitable relief in the form of a declaration by the Court that neither Brinton, Conte, or their associated business entities had any right or interest in the properties. Pace also asked that Plaintiffs disgorge monies collected during their operation of the apartments, but made no claim for legal damages.

Intervenor Tulsa Silverwood Apartments subsequently moved to intervene in the action, alleging it was the rightful owner of the Silverwood Apartments, and that the Master Lease cited by Plaintiffs had never been lawfully recorded and was of no legal effect. The Court granted the motion on October 27, 2017. In its cross-claim and counter-claim, Tulsa Silverwood sought quiet title to the apartment complex against both Plaintiffs and the Conte Defendants. In its counterclaim against Plaintiffs, Tulsa Silverwood also asked for an accounting and suffender of rents collected during is management of the property.

Based on a settlement between Brinton and Conte, Plaintiffs moved on January 26, 2018, to dismiss their claims against the Conte Defendants. Those claims were duly dismissed on March 20, 2018. Several months later, Plaintiffs Brinton and ZibalStar moved for leave to file a cross-claim against Robert Conte and a third party petition against Theodore Hansen (one of Conte's agents), alleging that they had breached the settlement agreement between Brinton and Conte and

- 3 -

their entities.  On December 5, 2019, however, these two Plaintiffs filed a notice they were withdrawing the request.

On February 5, 2018, the Court granted a Stipulated Joint Motion which dismissed the claims of the Plaintiffs against Defendant Mark Beesley.  Further, on November 11, 2018, the Original Plaintiffs filed a Stipulation of Dismissal of their claims against Scott Pace.  As a result, the Original Plaintiffs have no active claims against any party.

On October 10, 2017, four of the Original Defendants (Oxfordshire Holdings, 2523 East, and Heathrow Holdings, and 2507 South) filed counterclaims against Plaintiff TMBRS.  On March 20, 2018, these claims were dismissed by the Court upon a stipulation submitted by Plaintiffs and the Conte Defendants.

**B.      The Receivership and Disposition of the Apartment Complexes**

On September 21, 2018, Pace and Tulsa Silverwood Apartments moved for the appointment of a Federal Receiver for the three complexes.  The Court granted the request on October 30, 2018, authorizing the Receiver to market the properties to potential buyers.

On March 13, 2019, Tulsa Silverwood asked the Court to approve the sale of the Silverwood Apartments by the Receiver to Eric Manriquez and Juan M. Rivera Gonzalez for $800,000. On March 29, 2019, the Court granted the motion, approving the sale and ordering the distribution of proceeds.

On August 7, 2019, Pace moved for approval of the sale of Whispering Oaks to Cullor Asset Management, LLC for $775,000. In his motion, Defendant Pace asked the Court to order the Receiver to remit the net proceeds from the sale of the Whispering Oaks Apartments to Defendant Pace in partial satisfaction of the note and mortgage, in which he a first priority position.

The Court granted the motion and approved the sale and ordered the Receiver to remit the net proceeds from the sale of the Whispering Oaks Apartments to Pace on August 30, 2019.

In late 2019, Pace moved for summary judgment against Co-Defendant 2507 South 87th East Ave OK, LLC. ("2507"), one of Conte's limited liability companies and the owner of the Whispering Oaks and Four Oaks complexes.  Pace alleged that 2507 had executed a note and mortgage to Jordan K. James, a State Receiver appointed in connection with a judgment he had obtained in Oklahoma state court litigation in June of 2017, obliging 2507 to pay the Receiver some $1.3 million.  The State Receiver assigned both mortgage and note to Pace, and 2507 had defaulted on its payment obligations at the beginning of 2018, and as noted earlier, the Federal Receiver sold the subject properties during 2019.  Pace asked the Court to foreclose on the note and mortgage.

The Original Plaintiffs filed a response stating that they "disclaim[ed] any interest in the Four Oaks Apartments," and only opposed the motion to the extent it might be deemed to be a request for attorney fees from Plaintiffs.

All of the Conte Defendants (except 2507) filed a response indicating that they "are prepared to disclaim any interest in the Subject Real Properties superior to those of Dr. Pace." These Defendants did not dispute any of the facts asserted in Pace's motion, but alleged that Hansen had violated Conte's instructions in the creation of the Texas LLC.  Specifically, according to the Response, Hansen had fraudulently formed the 2507 LLC such that it was an entity owned by Hansen rather than Conte.  Accordingly, they argued that they were not liable under either the note or mortgage.

In keeping with this position, counsel for these Defendants moved to withdraw from representing the 2507 LLC.  The Court granted the motion on October 29, 2020, and directed 2507

to obtain new counsel within 30 days.  No attorney filed any entry of appearance on behalf of Defendant 2507 within that time, or at any time since.

On December 22, 2020, the Court granted Pace Defendants' motion for partial summary judgment and for foreclosure.  The Court observed:

> There is no evidence before the Court that any other Plaintiff or Defendant claims an interest in the Four Oak Apartments superior to Pace's interest. The Court already acknowledged Pace's priority when it ordered the proceeds from the sale of the Whispering Oak Apartments to be remitted to Pace. Dkt. No. 172. The Court concludes Pace's mortgage has priority over any claims of the Plaintiffs and other Defendant.

The Court entered judgment *in personam* against 2507 in the amount of $1,065,923.72, and judgement *in rem* against all Plaintiffs and Defendants, finding that Pace holds a superior interest in Four Oaks, and that any junior interest in the property would be extinguished upon confirmation of the sale of the property.

Pace subsequently moved to confirm the Four Oaks sale and for a deficiency judgment. The Court entered Orders which confirmed the sale and which granted judgment against 2507 LLC in the amount of $688,722.02.

The Federal Receiver filed her detailed Final Report reflecting her management of the Four Oaks, Whispering Oaks, and Silverwood Apartments.   Shortly thereafter, Pace and Tulsa Silverwood moved for approval of the Report, dissolution of the Receivership, and an order directing Triad Bank to disburse the balance of the Receivership account in the approximate amount of $ 60,241.64 to Pace.  None of the remaining parties filed any opposition to this motion, and the Court approved the Report and discharge of the Receiver.

C.    The Formation of 2507 South LLC.

As noted above, 2507 South LLC was ostensibly formed at the direction of Defendant Conte along with four other entities to assist in the management of rental properties in Tulsa.  The Original Complaint states specifically alleges that Defendant Conte is a resident of Nevada and the five entities are Texas limited liability companies.  Plaintiffs stated "on information and belief, Defendant Conte is the sole member of 2507 South 87th East Ave OK LLC."

Conte employed Theodore Hansen to create the five entities, with the instruction to make Conte the exclusive owner and member.  These entities were formed to hold title to the Tulsa apartment complexes.  However, during the course of the litigation it was revealed that Hansen had fraudulently formed the 2507 South entity.  Hansen made himself—not Conte—the sole member.

The Operating Agreement for 2507 South provides that the member is EZ 159, LLC.  The Operating Agreement further provides identifies Hansen as the "Member" and "Managing Member" of EZ 159.

Hansen is a resident of the State of Utah, as evidenced by his Voluntary Petition for Individuals Filing for Bankruptcy, filed in the United States Bankruptcy Court for the District of Utah, Salt Lake Division, Case 19-26528.  In that action, he acknowledged to the Bankruptcy Court that 2507 South was owned by EZ 159, LLC.  He stated that EZ 159 was owned by BT Holdings of Utah, LLC, at that he owned 50% of BT Holdings.

Records from the Texas Secretary of State show that 2507 South had its "principal office" and "principal place of business" in Utah, and that 2507 South was managed by EZ 159, which was located in Utah and was owned by a Utah company.

The Articles of Organization for EZ 159, filed with the Utah Department of Commerce, identify it as a Utah limited liability company formed in Utah in 2013, with a "principal place of business" in Highland, Utah. The same Articles show that EZ 159's member is The Bright Spot, LLC, located in Provo, Utah.

The Bright Spot, according to its Articles of Incorporation, is a Utah limited liability company formed in Utah in 2012, with its "principal place of business" in Provo, Utah.  The sole member of The Bright Spot, LLC is Becky Curtis, a resident of Utah.

**C.     The Remaining Claims in the Action.**

Following its entry of summary judgment as to 2507 South LLC, the Court directed the parties to submit a summary of the status of the litigation.  That Joint Statement filed by the parties indicates that the Original Plaintiffs and the Conte Defendants then had no active claims against any other party.

In response to the remaining crossclaims by Pace and Tulsa Silverwood, Original Plaintiffs Brinton and ZibalStar stated that Pace and Tulsa Silverwood were on notice of the Original Plaintiffs' possession of and legal interest in the apartments when they sued to obtain legal title, and that they failed to either name or give notice of the action to the Original Plaintiffs.  They argued that their actions were appropriate given their valid interest in the apartments, and provided no basis for imposing liability against them.  However, these Original Plaintiffs have since disclaimed any present interest in the relevant properties.

As to the similar crossclaims against them, the Conte Defendants argued that any judgment or other document that either Pace or Tulsa Silverwood relies on purporting to convey any right in or title to respective properties was obtained without due process and is void, and that the state lawsuits the Pace Defendants rely on did not include or give notice the Conte Defendants, who

have superior interests in the property.  The Conte Defendants did not object to the appointment of a receiver, or to her sale of the Silverwood Apartments. They denied any liability for any damages to Tulsa Silverwood on any claim.

The Joint Statement indicated that, among other defenses pled, Pace has denied all claims. However, there remained no claims pending against Pace.  Finally, the parties stipulated that the Court has jurisdiction and that venue is appropriate.

After this Statement by the parties, Pace and Tulsa Silverwood moved to amend their earlier pleadings to submit, respectively, new counter and crossclaims against the other parties. The motions of both parties state that since the action began "there have been significant developments with respect to the parties participating in this litigation."  According to the motions, the Original Plaintiffs objected to the request, but counsel for the Conte Defendants "expresses no objection."

On April 30, 2021, the Court granted Pace and Silverwood's motions to amend their respective counterclaims and crossclaims, which were then filed on May 7, 2021.

In the amended counter and crossclaim pleadings, the Pace Defendants allege that the Silverwood Apartments were previously owned by the 2507 LLC, which had granted a mortgage to Scott Pace in 2015.  In 2016, Pace had commenced an action to foreclose on the action in state court, *Scott E. Pace, MD. v. 2507 South 87th East Ave OK, LLC*.[1]  On March 15, 2017, the state court entered judgment in favor of Pace.  On August 2, 2017, Pace sold the property to Tulsa Silverwood.

---

[1] Case No. CJ-2016-02727 (Tulsa County).

Pace and Tulsa Silverwood allege that the state judgment recognized Pace's superior interest in the Silverwood Apartments, terminated the existing lease, and foreclosed any claim by the Original Plaintiffs or the Conte Defendants.  Tulsa Silverwood alleges that the Original Plaintiffs had not recorded any claim or interest in the property and were not entitled to notice of the action.

The amended pleadings further allege that on June 29, 2017, Pace had obtained a judgment in a separate action, *Black Sheep Software, LLC v. Estrella Group, LLC*,[2] which confirmed the sale of the Four Oaks and Whispering Oaks apartment complexes to the Estrella Group.  Under the judgment, the Estrella Group took title to the complexes in exchange for a note and mortgage given to Pace.

Pace alleges that he gave notice of the judgments to the Original Plaintiffs and the Conte Defendants, but they continued to assert dominion and control over the apartments, refusing to acknowledge his superior interest.  Both Pace and Silverwood allege that the Original Plaintiffs and the Conte Defendants damaged the three complexes, failed to pay utilities, and converted rents.

Pace and Silverwood assert claims for slander of title, trespass, conversion, negligence, fraud, and conspiracy.  They alleged that they have been wrongfully denied possession and control of the three Tulsa apartment complexes—Silverwood Apartments, Four Oaks Apartments, and Whispering Oaks Apartments in Tulsa, Oklahoma.  They allege that rents and security deposits

---

[2] Case No. CV-2015-1076 (Tulsa County).

have been wrongfully diverted and have been converted, that the conduct of Plaintiffs and the Conte Defendants has caused them to suffer money damages in excess of $200,000.00.

## II.     Legal Standard

Under Rule 12(b)(1), the Court may dismiss a complaint based on a lack of subject matter jurisdiction.[3]  "Federal courts are courts of limited jurisdiction and, as such, must have a statutory basis to exercise jurisdiction."[4]  The plaintiff bears the burden of showing that jurisdiction is proper by a preponderance of the evidence.[5]  "Mere conclusory allegations of jurisdiction are not enough."[6]

Generally, a Rule 12(b)(1) motion takes one of two forms: a facial attack or factual attack. "[A] facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint.  In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true."[7]  A factual attack goes "beyond allegations contained in the complaint and challenge[s] the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations.  A court has wide discretion to

---

[3] Fed. R. Civ. P. 12(b)(1).

[4] *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir.. 2002).

[5] *Lindstrom v. United States*, 510 F.3d 1191, 1193 (10th Cir. 2007) (citation omitted).

[6] *United States ex rel. Stone v. Rockwell Int'l Corp.*, 282 F.3d 787, 798 (10th Cir. 2002) (citation omitted).

[7] *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995) (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)), *abrogated on other grounds by Cent. Green Co. v. United States*, 531 U.S. 425, 437 (2001).

allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)."[8]

## III.    Analysis

In seeking the dismissal of the amended cross and counterclaims, the primary argument of Plaintiffs and Conte Defendants is that Court lacks subject matter jurisdiction.  These parties also offer numerous additional arguments, arguing that (1) the new damages claims do not relate back the earlier equitable claims raised by Pace and Silverwood, and thus are both barred by the relevant state statutes of limitations and by the doctrine of laches; (2) the claims lack particularity and fail to state a claim; and (3) the claims against Brinton and ZibalStar are barred by Utah law relating to limited liability companies.[9]  The Court need not reach these secondary arguments, however, because it is clear the Court lacks subject matter jurisdiction given the true nature of 2507 South LLC.

28 U.S.C. § 1332(a)(1) provides that, "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, . . . and is between . . . citizens of different States."[10]  "A case falls within the federal district court's 'original' diversity 'jurisdiction' only if diversity of citizenship among the parties is complete, *i.e.*, only if there is no plaintiff and no defendant who are citizens of the same State."[11]

---

[8] *Id*. at 1003; *Davis ex rel. Davis v. United States*, 343 F.3d 1282, 1296 (10th Cir. 2003).

[9] *See* Utah Code Ann. § 48-3a-304.

[10] 28 U.S.C. § 1332(a)(1).

[11] *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (1998*).  See also Gadlin v. Sybron Int'l Corp*., 222 F.3d 797, 799 (10th Cir. 2000); *Salt Lake Trib. Publ'g Co., LLC v. AT & T Corp*., 320 F.3d 1081, 1095-96 (10th Cir. 2003) ("It has long been the rule that to satisfy the diversity of citizenship requirement of 28 U.S.C. § 1332(a)(1) the plaintiffs and defendants must be completely diverse: No plaintiff can be a citizen of the same state as any defendant.").

Here, subject matter jurisdiction is lacking because the fraudulently-formed 2507 LLC is actually a citizen of Utah.  "For diversity purposes, a limited liability company takes the citizenship of all its members."[12]  "When an LLC's members themselves are unincorporated associations such as additional LLCs or limited partnerships, the citizenship of the LLC party is determined by a complete upstream analysis of its organizational structure."[13]  Complete diversity did not exist at the time the action was filed because Plaintiffs Brinton, ZibalStar, and TMBRS were all residents of Utah, as was Defendant 2507 South.

In their response to the Motions to Dismiss, Pace and Tulsa Silverwood do not challenge the facts at the core of jurisdictional challenge.  They do not argue that complete diversity existed, for example, because 2507 South was indeed, as it purported to be, a Texas entity.  Instead, they effectively concede the lack of complete diversity by asking the Court to engage in a two-step dance.

First, they propose to realign the parties.  Under this proposal, they would become the plaintiffs, and everyone else in the action would become defendants.  But this solves one problem (lumping together the Utah parties) by creating another.  Defendants Ruiz and Manriquez are, like the movants, residents of Oklahoma.  Thus, there would still be incomplete diversity because the new Realigned Plaintiffs and Realigned Defendants would include residents of Oklahoma  Hence, the necessary second step—Pace and Tulsa Silverwood ask the Court to dismiss the claims against Ruiz and Manriquez pursuant to Fed. R. Civ. P. 41(c).

---

[12] *Spring Creek Expl. & Prod. Co. v. Hess Bakken Inv., II, LLC*, 887 F.3d 1003, 1014 (10th Cir. 2018) (quotation marks and citation omitted).

[13] *SFF-TIR, LLC v. Stephenson*, 250 F. Supp. 3d 856, 1022 (N.D. Okla. 2017) (citing *Bayerische Landesbank, N.Y. Branch v. Aladdin Cap. Mgmt., LLC*, 692 F.3d 42, 49 (2d Cir. 2012).

This second step is not difficult.  Absent some specific prejudice to an opposing party, a request for voluntary dismissal will ordinarily be granted.[14]  "The rule is designed primarily to prevent voluntary dismissals which unfairly affect the other side, and to permit the imposition of curative conditions.  Thus, when considering a motion to dismiss without prejudice, the important aspect is whether the opposing party will suffer prejudice in the light of the valid interests of the parties."[15]

In support of this approach, Pace and Tulsa Silverwood rely entirely on the decision of the Supreme Court in *Newman-Green, Inc. v. Alfonzo-Larrain*.[16]  In that case, the plaintiff, an Illinois citizen brought a state contract claim against a Venezuelan corporation, four Venezuelan citizens, and William Bettison, a United States citizen living in Venezuela.  The district court granted partial summary judgment for both sides of the dispute.  The jurisdiction to hear the action, however, was first raised during the appeal to the Seventh Circuit.  The hearing panel noted that the Bettison was a U.S. citizen not domiciled in any particular State, and jurisdiction was lacking under 28 U.S.C. §.1332(a).  The plaintiff accepted the panel's invitation to file an amended complaint to drop Bettison from the action as a party.  However, the Seventh Circuit accepted the defendant's motion for a rehearing *en banc*, and found no authority for courts of appeal to dismiss "jurisdictional

---

[14] *See Ohlander v. Larson*, 114 F.3d 1531, 1537 (10th Cir. 1997)

[15] *Phillips USA, Inc. v. Allflex USA, Inc.*, 77 F.3d 354, 357 (10th Cir. 1996) (quotations, brackets, and internal citations omitted).

[16] 490 U.S. 826 (1989).

spoilers,"[17] and remanded the case to the district court to determine whether to drop Bettison from the action.

The Supreme Court reversed this decision, holding that courts of appeal have the authority to drop a dispensable nondiverse party under Fed. R. Civ. P. 21. "[I]t is well settled," the Court observed, "that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time."[18] The Court held that courts of appeal also had such authority, noting both its own prior rulings and the decisions of "[a]lmost every modern Court of Appeals faced with this issue."[19] In addition, the Court noted the practicalities—

> In this case, the practicalities weigh heavily in favor of the decision made by the Court of Appeals panel to grant Newman–Green's motion to dismiss Bettison as a party. If the entire suit were dismissed, Newman–Green would simply refile in the District Court against the Venezuelan corporation and the four Venezuelans and submit the discovery materials already in hand. The case would then proceed to a preordained judgment. Newman–Green should not be compelled to jump through these judicial hoops merely for the sake of hypertechnical jurisdictional purity.[20]

Thus, "[n]othing but a waste of time and resources would be engendered by remanding to the District Court or by forcing these parties to begin anew."[21] The Court stated that although the panel could have directly dismissed the dispensable nondiverse party, "such authority should be exercised sparingly" and only where the result will work no prejudice to the opposing parties.[22]

Justice Kennedy forcibly dissented, observing that

---

[17] *Id.* at 830.

[18] *Id.* at 832.

[19] *Id.* at 833-36.

[20] *Id.* at 837 (citation omitted).

[21] *Id.* at 838.

[22] *Id.* at 837.

Rule 21 governs only misjoinder and nonjoinder. But that is not what is at issue in this case. There is no claim here that Bettison is an improper party to this action, only that his presence defeats federal jurisdiction. It must be remembered, moreover, that Federal Rule of Civil Procedure 82 expressly provides that the other Rules must not be construed to extend or limit the jurisdiction of the district courts. Since dismissing a nondiverse party confers jurisdiction retroactively on the district court, it is questionable whether relying on Rule 21 is consistent with Rule 82's clear admonition.[23]

Notwithstanding this observation, the Court assumes for purposes of the present Order that it would indeed have the ability to dismiss Ruiz and Manriquez under Rule 21 in order to preserve diversity. As noted earlier, such a dismissal is generally permitted in the absence of a showing of prejudice.

But the Court can reach this second step only if the first step was appropriate. *Newman-Green* was not a realignment case. If the court lacks subject matter jurisdiction to begin with, it cannot reach that second step.

The subject-matter jurisdiction of a federal court "depends upon the state of things at the time the action is brought."[24] Thus, "[j]urisdiction is assessed as of the time the case is commenced, and thus cannot be ousted by post-filing changes."[25]

This time-of-filing rule is hornbook law (quite literally) taught to first-year law students in any basic course on federal civil procedure. It measures all challenges to subject-matter jurisdiction premised upon diversity of citizenship against the state of facts that existed at the time of filing—whether the challenge be brought shortly after filing, after the trial, or even for the first time on appeal. Challenges

---

[23] *Id.* at 839-40 (Kennedy, J., dissenting) (citing *Finley v. United States*, 490 U.S. 545, 547-48 (1989) for the proposition that "it has never been the rule that federal courts, whose jurisdiction is created and limited by statute . . . acquire power by adverse possession").

[24] *Grupo Dataflux v. Atlas Glob. Grp., L.*P., 541 U.S. 567, 570-71 (2004) (quoting *Mollan v. Torrance*, 22 U.S. 537, 539 (1824).

[25] 13E Charles Alan Wright *et al., Federal Practice and Procedure* § 3522 (3d ed. 2017*)*.

to subject-matter jurisdiction can of course be raised at any time prior to final judgment.[26]

"A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking."[27]  Additionally, lack of jurisdiction may not be waived and jurisdiction cannot be conferred by "consent, inaction or stipulation."[28]  "Since federal courts are courts of limited jurisdiction, there is a presumption against our jurisdiction, and the party invoking federal jurisdiction bears the burden of proof."[29]

"Judicial realignment of the parties prevents the creation of sham diversity jurisdiction."[30] In deciding whether a case has been misaligned, the test is whether "actual and substantial conflicts in fact existed at the initiation of the lawsuit."[31]  "Realignment is not an always-available tool that can be invoked by the parties on a whim to create or destroy diversity jurisdiction when they find it most convenient.  Rather, it is a tool intended to protect against manufactured jurisdiction."[32] The relief "hinges on those issues that divide the parties, not on those on which they agree."[33]

---

[26] *Id.*  at 570-71 (citations and parentheses omitted)..

[27] *Basso v. Utah Power & Light Co*., 495 F.2d 906, 909 (10th Cir.1974).

[28] *Penteco Corp. L.P.—1985A v. Union Gas Sys*., 929 F.2d 1519, 1521 (10th Cir. 1991) (quoting *Basso*, 495 F.2d at 909).

[29] *Id.*

[30] *Jackson v. Home Depot U.S.A, Inc*., 880 F.3d 165, 172 (4th Cir. 2018) (citation omitted).

[31] *Maryland Cas. Co. v. W.R. Grace and Co*., 23 F.3d 617, 623 (2nd Cir. 1933).  *See Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 69-70 (1941) (Realignment is "not to be determined by mechanical rules" or "by the parties' own determination of who are plaintiffs and who defendants, but by the "collision of interest" in the "pursuit of practical ends.").

[32] *Travelers Prop. Cas. Co. v. M.B. Kahn Constr. Co*., 2021 WL 1177861, at *15 (D.S.C. 2021).

[33] *Maryland Cas*., 23 F.3d at 623.

The Tenth Circuit addressed the issue of realignment in *Farmers Alliance Mut. Ins. Co. v. Jones*,[34] observing:

> In diversity suits, courts will scrutinize the interests of the parties in order to determine if their positions as plaintiffs and defendants conform to their real interests. When appropriate, parties will be realigned; however, *this is to be done only after real rather than apparent interests have been ascertained*. Facts which can be used for forming the determination that realignment is proper must have been in existence at the time the action was commenced. An action is deemed to commence at the time of filing of the complaint. Accordingly, we must examine the pleadings to determine if there was a justiciable controversy.[35]

In *Farmers*, two defendants argued there was no real controversy between the plaintiffs and two of their co-defendants, and argued that if the co-defendants were realigned with the plaintiffs there would have been no diversity. The Tenth Circuit held that the district court had not erred in refusing realignment, based on its examination of the pleadings:

> Facts which can be used for forming the determination that realignment is proper must have been in existence at the time the action was commenced. An action is deemed to commence at the time of filing of the complaint. Accordingly, we must examine the pleadings to determine if there was a justiciable controversy. Farmers, in its complaint, alleges that an actual controversy exists "involving the rights and liabilities under contract of liability and dependent upon the construction of said contract of liability insurance." In their answer, defendants Company and Orval Spann contend that Farmers should be required to provide coverage to Company to the extent of the policy limits and to defend Company in any action arising out of the May 1976 accident. These facts, as pleaded, reveal then that Farmers and Company recognized that their interests were adverse.[36]

Under *Farmers*, the existence of a conflict is determined from the face of the pleadings. Here, Brinton, ZibalStar, and TMBRS, the original Plaintiffs, alleged the mismanagement of the

---

[34] 570 F.2d 1384 (10th Cir.), *cert. denie*d, 439 U.S. 826 (1978).

[35] *Id*. at 1387  (emphasis added, citations omitted).

[36] *Id*. (citations omitted).

subject properties, and one of the defendants was 2507 South LLC.  Plaintiffs specifically complained of the conduct of 2507, and asked for damages based on that conduct..

This is not a case where Plaintiffs misaligned the parties in an attempt to manufacture diversity jurisdiction where it otherwise would not exist.  The parties were properly aligned according to their actual interests.  And that alignment is fatal to the Court's jurisdiction

Pace and Tulsa Silverware have cited no authority for using realignment in this fashion – moving parties around, ignoring their actual conflicting interests, purely for the sake of manufacturing jurisdiction.  That is not what realignment is supposed to accomplish.  Realignment is intended to prevent manufactured jurisdiction, not accomplish it.

In *Ravenswood Inv. Co. v. Avalon Corr. Servs.*,[37] the Tenth Circuit stressed that the power of a district court under Rule 21 to dismiss a nondiverse dispensable party, recognized in *Newman-Green*, is the *only* recognized exception to the principle that jurisdiction is to be determined on the facts as they existed at the time of the complaint.[38]  In that case, the parties discovered that complete diversity never existed after some claims had been decided.  The district court severed the decided claims involving diverse parties, entering final dispositions on those claims, and then dismissed the remainder of the claims.  Tenth Circuit reversed, stressing this maneuver went beyond the single recognized exception to the general rule:

> [T]here is no authority for the proposition that creating multiple federal actions is a permissible way to cure a jurisdictional defect in a diversity case.  The sole recognized exception to the time-of-filing rule is when a court completely dismisses from the case a nondiverse party pursuant to Rule 21.  Attempts to create additional exceptions have been rejected.  In *Grupo Dataflux*, for example, the Supreme Court rejected a claim that a lack of complete diversity resulting from the citizenship of a

[37] 651 F.3d 1219 (10th Cir. 2011).

[38] *Id.* at 1223 (citing *Smith v. Sperling*, 354 U.S. 91, 93 n. 1 (1957)).

limited partner in a partnership was cured when the partner left the partnership.  The Supreme Court has "adhered to the time-of-filing rule regardless of the costs it imposes."  It would be contrary to the principles established by the Supreme Court to create a new exception to the time-of-filing rule allowing cases to be split into multiple federal actions to achieve complete diversity in pieces of the litigation over which the court lacked subject matter jurisdiction at the outset. Such an exception would create an end-run around the longstanding rule requiring complete diversity at the time of filing.[39]

Here, Pace and Tulsa Silverwood invite the Court to do something similar: ignore the absence of subject matter jurisdiction at the time of the complaint, and manufacture diversity by realigning the parties, all in a manner contrary to the rules and purposes of realignment.

Lacking any authority for this result, Pace and Tulsa Silverwood conclude by invoking the observation in *Newman-Green* that the courts should avoid the inconvenience which would arise from the dismissal of an action where the result would simply be a refiling of the action against those parties who are diverse.

But again, the issue in *Newman-Green* was only the ability of the courts to dismiss dispensable nondiverse defendants under Rule 21.  Pace and Tulsa Silverwood supply no authority for adopting a similar rule of economy as a basis for ignoring the lack of subject matter jurisdiction at the time the case was filed, and ignoring the caution echoed in *Ravenwood* that courts must "adhere[] to the time-of-filing rule *regardless of the costs it imposes*."[40]

---

[39] *Ravenswood*, 651 F.3d at. at 1224 (citing and quoting *Grupo Dataflux*, 541 U.S. at 571, 582 (additional citations omitted).

[40] *Id.* (quoting *Grupo*, 564 U.S. at 571) (emphasis added).

If the Court "has no jurisdiction over the case" at the time of filing, it can have "no occasion to consider whether to exercise its discretion under Rule 21 to sever the parties and the claims."[41] Relying entirely on Rule 21, and the Supreme Court's treatment of the issue in *Newman-Green,* "puts the cart before the horse" because, "as with all federal rules, [the joinder rules] appl[y] *after* a federal court has jurisdiction" and will not themselves "*establish* jurisdiction."[42]

Given the true status of 2507 South LLC, there was incomplete diversity among the parties. Plaintiffs and Defendant 2507 South are all residents of Utah.  Further, because Plaintiffs and 2507 South had genuinely adversarial interests, the Court is not free to realign the parties to create jurisdiction where it did not exist at the time the case was filed.  Since subject matter jurisdiction is lacking, "the only function remaining to the court is that of announcing the fact and dismissing the cause."[43]  That the Court previously entered judgment against 2507 South is of no moment. The requirement of dismissal "is equally true when a party notices the jurisdictional defect before judgment, when a party notices it after judgment in Rule 60(b)(4) proceedings, and when no party notices it."[44]

**IT IS THEREFORE ORDERED** that the Motions to Dismiss of Plaintiffs and the Conte Defendants (or for Joinder in the arguments made as to such motions) (Docs. 249, 250, 251, 252,

---

[41] *Welborn v. Ethicon Inc.*, 2022 WL 17600302, at *22, *23 (N.D. Ind. 2022) ("If complete diversity did not exist when the case was filed or when the case was removed, the Court cannot create it by reconfiguring the case at the removing defendant's request in the face of Plaintiffs' opposition.").

[42] *Williams v. Homeland Ins. Co. of New York*, 18 F.4th 806, 817 (5th Cir. 2021) (emphasis in original).

[43] *Ex parte McCardle*, 74 U.S. 506, 514 (1868).  *See Tinner v. Farmers Ins. Co.*,  504  F. App'x 710, 715 (10th Cir. 2012) (citing *McCardle*).

[44] *Mitchell Law Firm v. Bessie Jeanne Worth Revocable Tr.*, 8 F.4th 417, 422 (5th Cir. 2021) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 92-93 (1998)).

253, 255, 257) are hereby **GRANTED** as provided herein; the Motions to Realign (Doc. 262) and

to Dismiss (Doc. 263)  of Defendant Pace and Intervenor Tulsa Silverwood are hereby **DENIED**.

The present action is accordingly dismissed.

       **IT IS SO ORDERED**.

       This closes the case.

       Dated this 1st day of May, 2023.


ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE